IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL LEE HARTNESS, ) | Civil Action No. 4:12-2978-DCN-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## JURISDICTION

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## PROCEDURAL HISTORY

The Plaintiff, Michael Lee Hartness, filed an application for DIB and SSI on July 31, 2006, alleging a disability onset date of October 1, 2000. Plaintiff requested a hearing before an administrative law judge (ALJ) after his claim was denied initially and on reconsideration. A hearing was held on April 2, 2009. The ALJ issued a decision on August 17, 2009, finding that Plaintiff was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

not disabled. After the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision, the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981. Plaintiff subsequently filed an action in this court. On April 13, 2011, Defendant filed a Motion to Remand pursuant to Sentence Four. Plaintiff filed a response consenting to the remand. On August 28, 2009, this court entered an order remanding the case under sentence four of 42 USC §405(g) for further proceedings.[2] Upon remand, the Commissioner was directed to assign this case to an administrative law judge (ALJ) to complete the administrative record by obtaining Dr. Gaines' February 2004 report and the orthopedic treatment records from 2007/2008 that were offered into the record during the administrative hearing; evaluate whether Plaintiff meets or equals listing 1.03, reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, or listing 1.06, fracture of the femur, tibia, pelvis, or one or more of the tarsal bones; evaluate Dr. Gaines' medical opinion concerning the Plaintiff's functional abilities and give reasons for the weight given to that opinion; re-evaluate the State agency physicians' assessments of Plaintiff's functional abilities; and re-evaluate Plaintiff's residual functional capacity (RFC). Supplemental hearings were held on December 9, 2011, and March 16, 2012. On June 14, 2012, the ALJ issued a decision that was partially favorable, finding Plaintiff disabled from September 2, 2002, through June 1, 2008. Plaintiff filed this action on October 15, 2012.

## FACTUAL BACKGROUND

The Plaintiff was born on November 12, 1967. Plaintiff completed the eighth grade and has past work as a boilermaker, pipefitter, and welder. Plaintiff alleges disability since October 1, 2000, due to degenerative disc disease, a foot injury, sleep apnea, and depression.

---

[2] Civil Action No.: 4:10-cv-1776-CMC-TER

## **DISABILITY BACKGROUND**

The Plaintiff's arguments consist of the following, quoted verbatim:

1.   The ALJ failed to properly assess the evaluating physician's opinion as required by 20 CFR 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

2.   The ALJ failed to properly address the issue of medical improvement in finding Hartness eligible for only a closed period of disability benefits.

3.   The ALJ failed to correctly assess Hartness' credibility and subjective allegations.

(Plaintiff's brief).

In the decision of June 14, 2012, the ALJ found the following[3]:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2002. By establishing an alleged onset prior to his date last insured, he is entitled to disability insurance benefits during the closed period of disability.

2.   The claimant has not engaged in substantial gainful activity since October 1, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et seq.*).

3.   The evidence in this case shows that the claimant has the following severe impairments: residuals from surgery of the left heel times two, obesity, knee pain, gout and chronic low back pain (20 CFR 404.1520(c) and 416.920(c)).

4.   Between his alleged onset date of October 1, 2000 and September 2, 2002, the claimant did not have an impairment or combination of impairments that met or equaled any of the listing of impairments in Appendix 1, Subpart P of Regulation No.4.

5.   Between his alleged onset date of October 1, 2000 and September 2, 2002, the claimant retained a residual functional capacity for the full range of light work. He has worked in the relevant past as a boilermaker, pipefitter and welder, jobs requiring "heavy" levels of physical exertion. The claimant has been unable to perform his past relevant work at all times

---

[3] The paragraphs are misnumbered as they were in the decision.

       relevant to this decision.

4.    The claimant has been a "younger individual" at all times relevant to this decision (20 CFR 404.1563 and 416.963).

5.    The claimant has an eighth grade education, considered "limited" under Medical-Vocational Guidelines (20 CFR 404.1564 and 416.964).

6.    With a residual functional capacity for the full range of light work, Rule 202.18 of the Medical-Vocational Guidelines directs a conclusion that the claimant was "not disabled" between October 1, 2000 and September 2, 2002 (20 CFR 404.1565 and 416.965).

7.    The claimant was under a disability, as defined by the Social Security Act, from September 2, 2002, through June 1, 2008 (20 CFR 404.1520(d) and 416.920(d)).

8.    Between September 2, 2002 and June 1, 2008, the claimant's(sic) was recovering from a fracture of his left heel and was in non-weight bearing status for a period of eighteen months. This condition could be said to meet the Listing criteria of section(s) 1.02 and 1.03 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).

9.    The claimant has not developed any new impairment or impairments since June 2, 2008, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from September 2, 2002 through June 1, 2008.

10.   Subsequent to June 2, 2008, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(I)).

11.   Medical improvement occurred as of June 2, 2008, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(I)).

12.   The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of listing (20 CFR 404.1594(c)(3)(I) and 416.994(b)(2)(iv)(A)).

    13.    After careful consideration of the entire record, I find that, subsequent to June 2, 2008, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he would need a job with a sit/stand option and could perform jobs requiring only occasional stooping, squatting and crawling, only occasional climbing of ramps or stairs and could not climb scaffolds or ladders or use his feet and legs for pushing, pulling, or the operation of foot controls.

    14.    Beginning June 2, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    15.    Beginning June 2, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

    16.    The claimant's disability ended June 2, 2008 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Tr. 522-528).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989

(4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a <u>de novo</u> review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>See</u> 20 C.F.R. § 404.1505(a); <u>Blalock</u>, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). <u>Hall v. Harris</u>, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.

SSR 82-62.  The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act.  42 U.S.C. § 423 (d)(5).  He must make a prima facie showing of disability by showing he was unable to return to her past relevant work.   Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  Id. at 191.

## ARGUMENTS AND ANALYSIS

### Evaluating physician's opinion

Plaintiff argues that the ALJ failed to properly assess the evaluating physician's opinion. Specifically, Plaintiff asserts that he was evaluated by Dr. Harriett Steinert and her report was the most recent medical evidence submitted into the record. Plaintiff contends that the ALJ referenced the evaluation of Dr. Steinert in his decision but did not acknowledge the functional capacity assessment completed by Dr. Steinert. Plaintiff argues that the ALJ gave no indication regarding the weight he accorded Dr. Steinert's assessment "which is remarkable given Hartness' case was previously remanded in part because the ALJ failed to acknowledge and assess the opinion of disability provided by another consultative examiner." (Plaintiff's brief, p. 25). Further, Plaintiff asserts it is not clear if the ALJ intended to adopt the opinion of Dr. Steinert as he did not indicate he was disregarding it so that the ALJ's RFC may have intended to incorporate her findings. However, Plaintiff avers that while there is some similarity between the two RFC assessments, Dr.

Steinert's assessment is far more restrictive than the RFC indicated in the hearing decision. Plaintiff argues that the essence of the ALJ's RFC is that he is restricted to light work, but needs to be able to change position on an occasional basis, which the Commissioner defines as one third of the workday. Plaintiff avers that Dr. Steinert opined that he could only stand a total of two (2) hours a day, a finding compatible with sedentary work, and could only sit four (4) hours a day, which would significantly restrict even the range of sedentary work, and the ALJ's RFC includes no such restriction on sitting or standing. Plaintiff contends that the VE testified that if the restrictions indicated by Dr. Steinert were accepted, there were not jobs existing in significant numbers that Plaintiff could still perform. Therefore, Plaintiff requests that his case be remanded for further proceedings to assess the medical opinion of Dr. Steinert.

In response, the Defendant asserts that the ALJ properly considered Dr. Steinert's opinion. Defendant argues that the ALJ specifically considered and discussed Dr. Steinert's findings and even though "he did not expressly mention Dr. Steinert's opinion regarding Plaintiff's functional abilities. . . . he expressly included it in his questioning to the VE and in his step five discussion regarding reconciliation of the opinion with the VE's testimony." (Defendant's brief, p. 10). Defendant contends that the ALJ's RFC was clearly based on Dr. Steinert's opinion of Plaintiff's abilities and the RFC specifically accommodated Dr. Steinert's opinion that Plaintiff needed to spend half of the workday sitting and half of the workday standing/walking. Therefore, Defendant concludes that the record makes clear that "although the ALJ did not expressly discuss Dr. Steinert's opinion of Plaintiff's functional abilities, he properly considered it as required by the regulations." (Defendant's brief, p. 11).

Dr. Steinert performed a consultative exam on January 18, 2012, at the request of the Defendant diagnosing Plaintiff with morbid obesity, hypertension, status post left heel fracture, arthritis of the right knee, and degenerative disc disease of the lumbar spine. (Tr. 745-755). Dr.

Steinert concluded that Plaintiff could lift and carry 10 pounds, 11-20 pounds occasionally and never lift more than 20 pounds; could sit for 15 minutes, stand for 5 minutes, and walk for 5 minutes at a time; could sit for 4 hours, stand for 2 hours, and walk for 2 hours in an 8-hour day; could occasionally use the left foot to operate foot controls; could occasionally climb, balance, stoop, kneel, crouch, and crawl. These limitations were due to Plaintiff's degenerative disc disease of the lumbar spine, pain in his left heel, and arthritis in his right knee. (750-755). Dr. Steinert opined that the limitations lasted or would last for 12 consecutive months. (Tr. 755). The ALJ found Plaintiff had an RFC that would allow him to perform a restricted range of light work without mentioning the functional assessment completed by Dr. Steinert. In the decision, the ALJ discussed the summary of medical evidence with regard to Dr. Steinert as follows:

> Following his hearing before me in December 2011, I sent the claimant for a consultative examination. Pursuant to my request, Dr. Harriett Steinert, an orthopedist, examined the claimant in January 2012. The claimant told Dr. Steinert that he had suffered from lumbar pain for the past fifteen years. He also reported that he had residual pain from a fracture to his left heel from 2002, requiring prior surgical fusions with hardware placement. He stated that he took over the counter analgesics to control the pain. He also reported foot pain related to occasional gout.
>
> Dr. Steinert found that the claimant was morbidly obese, weighing 302 pounds at a height of 74 inches. However, she observed that he was able to get on and off the examination table without difficulty and had full range of motion in all joints and all four extremities except for mild restriction in dorsiflexion in his left ankle. Nevertheless, he had no difficulty taking off or putting on his shoes. His deep tendon reflexes and peripheral pulses were equal and normal in all extremities. He showed no pedal edema in his left lower extremity. He had normal gait, required no assistive device and he was able to tandem walk. Dr. Steinert observed no sensory or motor deficits and no muscle atrophy to suggest ongoing limitations related to the prior left heel fracture.

(Tr. 525).

The ALJ did not discuss the Plaintiff's functional limitations and restrictions opined by Dr. Steinert. The ALJ found that subsequent to June 2, 2008, the claimant had the RFC to "perform light work except he would need a job with a sit/stand option and could perform jobs requiring only occasional stooping, squatting and crawling, only occasional climbing of ramps or stairs and could

not climb scaffolds or ladders or use his feet and legs for pushing, pulling or the operation of foot controls." (Tr. 527). Again, the ALJ did not discuss the functional limitations opined by Dr. Steinert or the weight he gave her report although he included some of the functional limitations found by Dr. Steinert in the hypothetical to the VE and the RFC.[4] The ALJ did not discuss what weight he

---

[4] In the decision, the ALJ states the following after citing the jobs the Plaintiff could perform based on the VE's testimony:

> The claimant's attorney asked Ms. Clifford (the VE) if her testimony would change if it was shown that the individual in the above hypothetical situation was found to be unable to sit over four hours, stand over two hours or walk over two hours in an eight-hour workday or if they would need to shift positions every five to fifteen minutes. Ms. Clifford responded that on all three of the jobs mentioned above, the worker would be able to shift position at will because none of the jobs was "assembly-line" type jobs. She stated that each job was performed in an individualized setting allowing the worker to move about as needed.

(Tr. 528).

However, a review of the VE's testimony reveals that there was additional testimony by the VE upon being questioned by Plaintiff's attorney as follows:

Atty:   . . . if you took an individual just with a restriction, and I'll say sitting four hours, standing two hours and walking two hours, that seems to be a pretty significant restriction. And then, apart from that, if you took someone just with a need to shift positions every five minutes or so, that seems to be a pretty significant restriction.

But in particular, when you put those things together, the total time being only four hours in one position, two in the other position, the need to move around for a few hours a day versus staying in one position, and the need to change positions that frequently, do all these things have a significantly greater impact in total versus individually on the elimination of jobs that they would otherwise be able to perform?

VE:     Sure.

Atty:   Can you give the Judge any idea of the amount of erosion that we're talking right here in these occupations, for each of these restrictions?

VE:     No, I mean, I'm not going to have any kind of specific number. I mean, obviously for light work, it's going to decrease the overall ability to do a lot of light work.

-10-

was giving to Dr. Steinert's report. Additionally, the ALJ did not discuss Plaintiff's degenerative disc disease as diagnosed by Dr. Steinert or Plaintiff's severe impairments of obesity and knee pain and what impact, both singularly and in combination, the impairments would have on his ability to work. Therefore, it is recommended that this case be remanded for the ALJ to assess the medical opinion of Dr. Steinert pursuant to the regulations.

**Medical Improvement**

Plaintiff argues that the ALJ failed to properly address the issue of medical improvement in finding Hartness eligible for only a closed period of disability benefits. Plaintiff asserts that the ALJ determined that he did not have any new impairments and that medical improvement had occurred subsequent to June 1, 2008. Plaintiff avers that the ALJ's decision stated that Plaintiff's severe impairments were the same as they had been from September 2, 2002, through June 1, 2008, and that the ALJ determined that the medical improvement that occurred was related to the ability to work because the claimant no longer had an impairment that met a Listing. Plaintiff argues that the ALJ based his decision almost exclusively on his heel fracture and subsequent surgeries without considering his back pain which was well documented in the medical evidence. In his reply, Plaintiff contends that the evidence regarding the diagnosis and unsuccessful treatment of degenerative disc disease merits consideration and may be relevant to prove a disability arising prior to the date last insured. Thus, Plaintiff states that without the ALJ's restrospective consideration of his degenerative disk disease, the decision that he is not disabled after 2008 is not supported by substantial evidence. Plaintiff asserts that even though his heel had some improvement following his last surgery, the record revealed he continued to have significant problems related to his heel. Plaintiff argues that the ALJ did not perform the analysis necessary to make a determination of medical improvement

---

(Supplemental transcript at 799).

that might be meaningfully reviewed. Plaintiff contends that the ALJ failed to mention his RFC during his period of disability, and no specific discussion as to what impairments were related to specific restrictions either during the period of disability, or during the subsequent period that the ALJ found improvement so that he was no longer disabled. Specifically, Plaintiff avers there is no meaningful discussion as to what if any improvement Plaintiff experienced in his knee or back conditions, and how these conditions were related to the RFC findings.

The regulations define medical improvement as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1). In this case, the comparison date for medical improvement would be the disability onset date, September 2, 2002. As stated above, Plaintiff argues that while he did have some improvement after surgery on his foot, he still had documented back problems and the evidence does not demonstrate that he is able to engage in a range of light work with some restrictions. The ALJ found Plaintiff had improved as of June 2, 2008. The ALJ concluded as follows without further discussion:

> Subsequent to June 2, 2008, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listing . . .
>
> Medical improvement occurred as of June 2, 2008, the date the claimants' disability ended. . .

(Tr. 527).

The ALJ's finding of medical improvement does not comply with the proper analysis

pursuant to the Social Security Regulations.[5] The ALJ did not discuss on what he based his conclusion that Plaintiff reached medical improvement on June 2, 2008, to the extent he could perform a range of light work with some restrictions. Without the proper analysis, this court cannot determine if substantial evidence supports the ALJ's decision. Based on the medical records, Plaintiff's condition may have improved after surgery on his foot, but the ALJ did not discuss Plaintiff's other severe impairments (obesity, knee pain, gout, and chronic low back pain) or on what evidence he relied to determine that Plaintiff improved to the extent he could perform the RFC set forth by the ALJ. The court is not finding that Plaintiff was unable to engage in substantial gainful activity as of June 2, 2008, but at least the ALJ fails to set forth substantial evidence to support the finding of medical improvement such that as of June 2, 2008, Plaintiff was capable of performing a range of light work as set forth in the RFC. Therefore, it is recommended that this action be remanded for the Commissioner to reevaluate and explain Plaintiff's date of medical improvement and/or his RFC as of that date.

Upon remand, the ALJ should conduct a proper analysis of Dr. Steinert's report concerning the Plaintiff's functional limitations and give reasons for the weight given to that opinion; conduct a proper analysis pursuant to the regulations as to his finding of medical improvement and/or Plaintiff's RFC including a discussion of all of Plaintiff's severe impairments and their impact both before September 2, 2002, and after June 1, 2008; and re-evaluate Plaintiff's credibility pursuant to the regulations.[6]

---

[5] To determine whether an individual's disability has ceased, the regulations prescribe a sequential evaluation that has specific steps. See 20 C.F.R. § 404.1594(a) and (f).

[6] In the decision, the ALJ found the Plaintiff not credible by simply stating the following boilerplate language without further discussion:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to

**CONCLUSION**

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge

January 16, 2014
Florence, South Carolina

---

> produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning June 2, 2008, to the extent they are inconsistent with the residual functional capacity assessment for het reasons detailed above.

(Tr. 527).

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985). The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486. A claimant's allegations about his pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).